IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| JOHN DYRDA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:13cv609 |
| | ) | |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

THOMAS D. SCHROEDER, District Judge.

Plaintiff John Dyrda brought this action pursuant to Section 205(g) of the Social Security Act, as amended (42 U.S.C. § 405(g)) ("the Act"), to obtain judicial review of a final decision of the Commissioner of Social Security denying his claim for supplemental security income. The parties have filed competing motions for judgment on the pleadings (Docs. 13, 15), and the administrative record has been certified to the court for review. For the reasons set forth below, Dyrda's motion will be denied, the Commissioner's motion will be granted, and the case will be dismissed.

I.  **BACKGROUND**

John Dyrda applied for supplemental security income on February 25, 2010, alleging that he became disabled on October 15, 2009. (Tr. at 51, 127-30.) The claim was denied initially

and again upon reconsideration. (Id. at 12.) Dyrda requested a hearing before an administrative law judge ("ALJ"), which was held on December 6, 2011 before ALJ Theresa Jenkins. (Id.) Dyrda, represented by counsel, testified at the hearing, along with an independent, vocational expert. (Id.)

The ALJ ultimately held that Dyrda was not disabled. (Id. at 19.) In rendering her decision, the ALJ made the following relevant findings later adopted by the Commissioner:

1. The claimant has the following severe impairments: chronic hypertension, coronary artery disease, right shoulder adhesive capsulitis and right acromloclavicular degenerative joint disease, L5-S1 posterior disc herniation, as well as obesity (20 CFR 416.920(c)).

. . . .

4. After careful review of the entire record, I find that the claimant has the residual functional capacity to perform "light" work as defined in 20 CFR 416.967(b) as lifting and carrying up to twenty pounds occasionally and ten pounds frequently, as well as sitting, standing and walking up to six hours in an eight hour workday. Although the claimant has unlimited use of his upper and lower extremities for pushing, pulling and operating hand or foot controls, he is limited to frequent but not continuous use of his right upper extremity for reaching in all directions. Additionally, the claimant can frequently perform all posturals, but he should avoid ladders, ropes, scaffolds, unprotected heights, as well as machines with dangerous parts. Finally, the claimant is capable of staying on task and sustaining attention and concentration for two hours at a time, but in a work environment that does not require a production or demand pace.

. . . .

2

5.  The claimant is capable of performing past relevant work as, solicitor (sold items at the state fair). This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 416.965).

. . . .

6.  The claimant has not been under a disability, as defined in the Social Security Act, since February 25, 2010, the date the application was filed (20 CFR 416.920(f)).

(Id. at 14-19.)

Dyrda sought review of his case with the Appeals Council, but was unsuccessful, making the ALJ's decision the final decision of the Commissioner. (Id. at 1.) Dyrda filed the present complaint with this court on July 24, 2013. The parties have each filed motions for a judgment on the pleadings (Docs. 13, 15), which are ripe for consideration.

## II. ANALYSIS

### A. Standard of review

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of . . . review of [such an administrative] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ

[underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (citations omitted) (internal brackets omitted) (setting out the standards for judicial review). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "[I]t consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (quoting Laws, 368 F.2d at 642) (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Social Security Commissioner]." Mastro, 270 F.3d at 176 (quoting Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)) (internal brackets omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the

4

[Social Security Commissioner or the ALJ]." Hancock, 667 F.3d at 472 (quoting Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005)). The issue before this court, therefore, "is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig, 76 F.3d at 589.

In undertaking this limited review, the court notes that in administrative proceedings, "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[1]

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R.

---

[1] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

5

§§ 404.1520(a)(4); 416.920(a)(4)).

> Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy.

Id. The claimant bears the burden as to the first four steps, but the Commissioner bears the burden as to the fifth step. Id. at 472-73.

In undertaking this sequential evaluation process, the five steps are considered in turn, although a finding adverse to the claimant at either of the first two steps forecloses a disability designation and ends the inquiry. In this regard, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

If a claimant carries his burden at each of the first two steps and also meets his burden at step three of establishing an impairment that meets or equals an impairment listed in the regulations, the claimant is disabled, and there is no need to proceed to step four or five. See Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is

6

not sufficiently severe to equal or exceed a listed impairment," then the analysis continues and the ALJ must assess the claimant's RFC. Id. at 179.[2] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work based on that RFC, the analysis proceeds to the fifth step, which shifts the burden of proof and "requires the Commissioner to prove that a significant number of jobs exist which the claimant could perform, despite [the claimant's] impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the

---

[2] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

7

Commissioner cannot carry her "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. <u>Hines</u>, 453 F.3d at 567.

**B.   The ALJ's Evaluation of Dr. Levy's Medical Opinion**

At step three, the ALJ found that Dr. Levy's medical opinions in his post-hearing statement were due "little weight" because his opinions were not "fully corroborated by the longitudinal treatment records" and did not give "specific diagnoses and treatment information related directly to the claimant, but primarily generalities related to the claimant's condition."  (Tr. at 18.)  Dyrda argues that the ALJ erred by not affording Dr. Levy's opinion controlling weight under the treating physician rule.  (Doc. 14 at 4–7.)  The Commissioner does not dispute that Dr. Levy was a treating physician, but argues that Dr. Levy's opinions are generalities not particular to Dyrda, and that other factors advise against affording his opinion controlling weight.  (Doc. 16 at 3–8.)

Under the treating physician rule, the ALJ generally must give controlling weight to a treating physician's opinion because the physician has had the opportunity to see the claimant over a long period of time.  20 C.F.R. § 404.1527(c)(2) (2014).  However, a treating physician's opinion is not due controlling weight when it is either "not supported by clinical

evidence or if it is inconsistent with other substantial evidence." Craig, 76 F.3d at 590. A treating physician's opinion is not entitled to controlling weight where it is conclusory, based upon a claimant's subjective reports of pain, and not supported by the physician's own medical notes. Id. And where the opinion or treatment is sought solely to obtain disability benefits, the physician's opinion is not controlling. Johnson v. Cont'l Cas. Co., 222 F. Supp. 2d 776, 779 (W.D.N.C. 2002). Finally, a treating physician's opinion will not be given controlling weight where the opinion lists diagnoses but fails to explain how such conditions affect the claimant's work-related abilities. See Thompson v. Astrue, 442 F. App'x 804, 808 (4th Cir. 2011).

An ALJ's decision not to afford controlling weight to a treating physician's opinion must be supported by substantial evidence in the record. Winford v. Chater, 917 F. Supp. 398, 401 (E.D. Va. 1996). In this case, substantial evidence supported the ALJ's decision not to credit Dr. Levy's medical opinions with controlling weight. Dr. Levy's medical opinions come in the form of responses to a questionnaire completed after the ALJ hearing. (Tr. at 783–85.) The ALJ properly found that few of the medical opinions given in the questionnaire specifically relate to Dyrda; rather, they tend to speak in generalities about risks associated with Dryda's diagnosis and

9

possible side effects of medications. (Id.) Dr. Levy himself notes that Dyrda is not compliant in taking his medications. (Id. at 775.) The most meaningful opinion favorable to Dyrda is that Dr. Levy has diagnosed Dyrda with "[s]evere, difficult-to-control hypertension." (Id. at 783.) But nowhere does Dr. Levy give an opinion as to how such a condition actually limits Dyrda's abilities. See Thompson, 442 F. App'x at 808.

Several other factors favor affirmance. First, Dyrda fails to explain how this diagnosis conflicts with the ALJ's RFC finding. See Fiske v. Astrue, 476 F. App'x 526, 528 (4th Cir. 2012). Dr. Levy diagnosed Dyrda with severe hypertension (Tr. at 783); the ALJ found that Dyrda suffered from even more "severe impairments," including "chronic hypertension." (Id. at 14.) Second, Dr. Levy's notes from the very first of his three meetings with Dyrda show that Dyrda began seeking treatment from Dr. Levy for the purpose of obtaining disability benefits. (Id. at 578 ("[Dyrda] indicates that he is applying for disability benefits and will need a letter to his attorney.").) Third, substantial evidence supports the inference that Dyrda was not truthful to Dr. Levy because, for example, he told Dr. Levy that he had quit smoking when he had not. (Id. at 271, 576.)

Substantial evidence demonstrates that Dr. Levy's medical opinions were not entitled to controlling weight. Dyrda's arguments to the contrary are without merit.

**C. The ALJ's Consideration of the Third-Party Statement**

The parties dispute whether the ALJ's failure to discuss a third-party statement by Laurie Van Lenten, Dyrda's cohabitating girlfriend, warrants remand. In support of their arguments, the parties rely primarily on two conflicting opinions from magistrate judges, later adopted by district courts in neighboring districts.

Dyrda advances Cooper v. Astrue, No. 2:08-CV-18-FL, 2009 WL 928548 (E.D.N.C. Apr. 3, 2009), for the following proposition:

> If the ALJ decides to reject lay testimony concerning a Claimant's pain or other symptoms, the ALJ must do so explicitly and with sufficient specificity to enable the court to decide whether there are legitimate reasons for the ALJ's disbelief and whether the ALJ's determination is supported by substantial evidence.

Id. at *5–6 (citing Hatcher v. Sec'y, Dep't of Health & Human Servs., 898 F.2d 21 (4th Cir. 1989)); see also Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996) ("However, lay witness testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence, and therefore cannot be disregarded without comment." (citations omitted)).

The Commissioner relies on Grubby v. Astrue, No. 1:09CV364, 2010 WL 5553677 (W.D.N.C. Nov. 18, 2010), adopted by 2011 WL 52865 (W.D.N.C. Jan. 7, 2011), for a contrary proposition: "As long as substantial evidence supports the ALJ's conclusion and the ALJ explains why 'significant probative evidence has been

11

rejected,' an ALJ's failure to discuss lay witness testimony constitutes harmless error." Id. at *7 (quoting Orcutt v. Barnhart, No. ED CV 04-889 PLA, 2005 WL 2387702, at *8 (C.D. Cal. 2005)). More explicitly, the case relied upon, Orcutt, held that "[w]hile lay witness testimony should generally not be ignored without comment, an ALJ's failure to explain his rejection of such testimony constitutes harmless error when that testimony does little more than corroborate plaintiff's testimony and adds nothing of substance to the record." Orcutt v. Barnhart, No. ED CV 04-889 PLA, 2005 WL 2387702, at *10 (C.D. Cal. Sept. 27, 2005). Other courts have adopted this rule. See, e.g., Books v. Chater, 91 F.3d 972, 980 (7th Cir. 1996).

The Social Security Administration has provided limited guidance on this issue. The agency acknowledges "a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision." SSR 06-03p (emphasis added). When it comes to lay testimony, the agency notes that the

> adjudicator generally should explain the weight given to [lay] opinions . . . or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.

Id.

The Court of Appeals for the Fourth Circuit has only

12

addressed the issue in broad terms. The court has found a "general requirement" that an "ALJ is required to explicitly indicate the weight given to relevant evidence." Hines v. Bowen, 872 F.2d 56, 59 (4th Cir. 1989). A proper administrative record "should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013). However, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision." Reid v. Comm'r of Soc. Sec., No. 13-1480, 2014 WL 4555249, at *3 (4th Cir. Sept. 16, 2014) (quoting Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam)). Additionally, the Fourth Circuit has embraced harmless error review of administrative decisions, such that, if an ALJ erroneously considered or failed to consider some evidence, remand is not appropriate unless the claimant was prejudiced. See, e.g., Morgan v. Barnhart, 142 F. App'x 716, 724-25 (4th Cir. 2005); Toney v. Shalala, No. 94-1008, 1994 WL 463427, at *3 (4th Cir. Aug. 29, 1994).

While the better practice is for the ALJ to comment on all lay evidence about a claimant's pain or other symptoms, in this case the failure to do so was harmless error. At the outset, it is clear that the ALJ considered Van Lenten's written, third-party statement, as she specifically mentioned it during the

13

hearing (tr. at 29) and noted in her decision that she had reviewed the complete record (id. at 14). Second, the substance of the statement is limited - one paragraph that contains several generalities:

> John Dyrda and I (Laurie Van Lenten) are in a relationship and live together since October 17, 2010.
>
> Having been with John for over a year now, there hasn't been any change in his lifestyle. His blood pressure restricts him from living a normal life. He takes medication for his blood pressure which controls it somewhat. Each and every day, John has limits on what he can do. Several times a week, he complains about extreme headaches where he can't even get out of bed for most of the morning. He takes his medication which makes him very tired, weak and lightheaded where he has to nap several times a day from feeling exhausted. At times, he can help with light housework such as doing a load of laundry or lightly dusting. He gets winded when climbing stairs which makes him have to stop and rest. Another example is when we go grocery shopping or even for a casual trip to the mall, he has to stop several times because of the tiredness and weakness.
>
> As far as being intimate in our relationship, it has taken its toll. It isn't anywhere near what it should be for a man his age.

(Id. at 282.) Third, it is notable that Van Lenten did not testify – which could have rendered the ALJ's findings of credibility, based on personal observation, more important – but instead relied on this written statement. Cf. Holley ex rel. D.H. v. Astrue, No. 2:11-CV-11-FL, 2012 WL 1029147, at *5 (E.D.N.C. Mar. 5, 2012) (finding ALJ's failure to comment on credibility of lay witness to be reversible error where lay

14

witness testified before the ALJ and the child-claimant was unable to testify for himself), report and recommendation adopted, No. 2:11-CV-11-FL, 2012 WL 1027816 (E.D.N.C. Mar. 26, 2012).

In this case the statement added little of substance to the record because it merely corroborated Dyrda's testimony, which the ALJ expressly found (tr. at 16) not to be credible in light of the medical evidence and record. See Orcutt, 2005 WL 2387702, at *10. The ALJ's explanation why Dyrda's testimony regarding the severity of his symptoms was not credible is supported by substantial evidence, which includes the following: Dyrda's daily activities, including housework and caring for his child; his ability to drive 600 miles and sit through a thirty-minute hearing despite testifying that he could not sit for more than ten minutes at a time; inconsistent reporting of symptoms to his doctors, creating an inference of fabrication; determinations by Dyrda's doctors that his symptoms were not as severe as he claimed; Dyrda's persistence in smoking despite warnings from his doctors; and Dyrda's failure to take pain-reducing medications despite claiming to suffer debilitating pain. (Tr. at 15–18.)

Dyrda makes no attempt to show at which step he was prejudiced by the ALJ's failure to explain the weight given to Van Lenten's statement. (See Doc. 14 at 7–8.) Even if the

ALJ's failure to explain the weight of her statement was error, given the substantial evidence supporting the ALJ's conclusions, Dyrda was not prejudiced thereby.  Accordingly, the Commissioner will not be reversed on this ground.

**III. CONCLUSION**

For the reasons stated, the court holds that the factual findings of the ALJ, which were adopted by the Commissioner, are wholly supported by substantial evidence.  There was no error in the ALJ's consideration of Dr. Levy's medical opinions or the ALJ's failure to explain the credibility of the statement by Van Lenten.

IT IS THEREFORE ORDERED that the Commissioner's motion for judgment on the pleadings (Doc. 15) is GRANTED, Dyrda's motion for the same (Doc. 13) is DENIED, and the case is DISMISSED.

    /s/   Thomas D. Schroeder
United States District Judge

September 19, 2014